UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

AT BECKLEY

DAKOTA WILLIAM PAYNTER,
Executor of the Estate of
BENJAMIN THOMAS PAYNTER,

       Plaintiff,                        CIVIL ACTION NO: 5:19-cv-00888

v.

GENERAL MOTORS LLC, a Delaware Corporation,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending are Motions by Defendant General Motors, LLC ("GM"), to (1) Dismiss Amended Complaint ("Motion to Dismiss") [Doc. 3], and (2) to Stay Litigation Pending Decision on Motion to Dismiss Amended Complaint ("Motion to Stay") [Doc. 17].

The Court **DENIES** the Motion to Dismiss [Doc. 3]. The Motion to Stay [Doc. 17] is consequently **DENIED** as moot.

I.

On September 11, 2017, 73-year-old Benjamin Thomas Paynter ("Benjamin"), was operating a 2008 Chevrolet Trailblazer ("Trailblazer") on Route 3 in Raleigh County. The Trailblazer was manufactured by GM. An oncoming vehicle crossed the centerline and struck the Trailblazer. The Takata airbag installed in the Trailblazer did not deploy. Benjamin ultimately succumbed to his injuries.

On September 10, 2019, Benjamin's Executor, Plaintiff Dakota William Paynter

("Mr. Paynter"), instituted this action in the Circuit Court of Raleigh County. Summons issued the same day but does not appear to have been served on GM by Mr. Paynter's counsel. On November 4, 2019, an Amended Complaint was filed. The original pleading and the Amended Complaint contain essentially identical factual allegations.

Both pleadings sound in product liability. The specific claims alleged in the Amended Complaint are for (1) negligence resulting in defective design, (2) negligence resulting in defective manufacture, (3) breach of express and implied warranties, (4) strict liability, and (5) failure to warn. On November 19, 2019, the Secretary of State was served and, as GM's attorney in fact, accepted process on GM's behalf. On December 12, 2019, GM removed, alleging diversity jurisdiction. On that same day, GM moved to dismiss, asserting Mr. Paynter's claims are barred by the applicable statute of limitations.

## II.

### A. Governing Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2); *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6). Any defense presented under Rule 12(b)(6) "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). Thus, the motion to dismiss must be filed before any answer to the complaint is filed. Additionally, and as an aside, any answer must be filed within thirty days of the issuance of the summons, except for situations wherein that timeline is enlarged by the court. Fed. R. Civ. P. 12(a).

The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *overruled on other grounds*, *Twombly*, 550 U.S. at 562-63); *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). Additionally, the showing of an "entitlement to relief" amounts to "more than labels and conclusions . . . ." *Twombly*, 550 U.S. at 558. It is now settled that "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *McCleary-Evans*, 780 F.3d at 585; *Giarratano v. Johnson*, 521 F.3d 298, 304 (4th Cir. 2008).

**B.  Governing Law Particular to the Limitations Defense**

Federal courts are generally obliged "to insure that, in all cases where a federal court is exercising jurisdiction solely because of . . . diversity . . . , the outcome of the litigation in the federal court should be substantially the same . . . as it would be if tried in a State court." *Guar. Trust Co. of N.Y. v. York*, 326 U.S. 99, 109 (1945) (discussing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Accordingly, federal courts exercising diversity jurisdiction apply the limitations periods of the state jurisdictions in which they sit. *See, e.g.*, *Wallace v. Kato*, 549 U.S. 384, 394 (2007) (observing that the Supreme Court has "generally referred to state law for tolling rules, just as [it] ha[s] for the length of statutes of limitations"); *cf. West v. Conrail*, 481 U.S. 35, 39 n.4 (1987) (observing that "state law not only provides the appropriate period of limitations but also determines" when "service must be effected").

Respecting limitations challenges appearing in a motion to dismiss, our Court of Appeals has noted that the Rule 12(b)(6) mechanism "is generally not . . . appropriate . . . to adjudicate the merits of an affirmative defense such as the expiration of the statute of limitations."

3

*Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc). There is nevertheless a minute carve out to the rule stated in *Praxair*:

> [I]n the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6). This principle only applies, however, *if all facts necessary to the affirmative defense "clearly appear[ ] on the face of the complaint."*

*Praxair*, 494 F.3d at 464 (quoting in part *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993) (emphasis added in part)). The decision in *Praxair* also noted that the claim in the case was potentially subject to the discovery rule and that the plaintiff's "complaint . . . does not provide facts sufficient to apply the discovery rule." *Id.* at 465.

C.      **West Virginia Law Governing the Limitations Analysis**

In syllabus point 5 of *Dunn v. Rockwell*, 225 W.Va. 43, 689 S.E.2d 255 (2009), the Supreme Court of Appeals of West Virginia observed as follows:

> A five-step analysis should be applied to determine whether a cause of action is time-barred. First, the court should identify the applicable statute of limitations for each cause of action. Second, the court (or, if questions of material fact exist, the jury) should identify when the requisite elements of the cause of action occurred. Third, the discovery rule should be applied to determine when the statute of limitations began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action, as set forth in *Syllabus Point 4* of *Gaither v. City Hosp., Inc.*, 199 W.Va. 706, 487 S.E.2d 901 (1997). Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action. . . . And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine. Only the first step is purely a question of law; the resolution of steps two through five will generally involve questions of material fact that will need to be resolved by the trier of fact.

*Id.* syl. pt. 5, at 47, 689 S.E.2d at 259. It is this analysis that must, consistent with *Praxair*, be conducted using only those facts that clearly appear in the Amended Complaint.

4

Respecting the first step, West Virginia Code § 55–2–12(b) provides that every action for personal injury damages shall be brought within two years after the right to bring the action has accrued. It is this limitation period that governs the types of product liability claims here alleged. *See Harrison v. Davis*, 197 W.Va. 651, 478 S.E.2d 104, 108 n.8 (1996) (stating personal injury negligence actions are governed by West Virginia Code § 55–2–12(b)); *Armor v. Michelin Tire Corp.*, No. 96-1724, 1997 WL 245217, at *2 (4th Cir. May 13, 1997) (stating similarly respecting product liability claims) (unpublished); *Johns v. Eastman Chem. Co.*, 248 F. Supp. 3d 765, 770 (S.D. W. Va. 2017) (same); *Hickman v. Grover*, 178 W.Va. 249, 251, 358 S.E.2d 810, 812 (1987) (same); Syl. pt. *Taylor v. Ford Motor Co.*, 185 W.Va. 518, 518, 408 S.E.2d 270, 270 (1991) (noting personal injury claims based on breach of an express or implied warranty are governed by section 55–2–12). Section 55–2–12 is thus the applicable statute of limitation for purposes of step one.

At steps two and three, however, the inquiry evolves into a decidedly more esoteric exercise. Again, the analysis is confined by the factual allegations in the operative pleading. The second step examines when the requisite elements of the claims coalesced; the third is pointed more sharply toward accrual, namely, a determination of when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of her possible claims.

Claims controlled by the two-year period prescribed by West Virginia Code § 55–2–12 accrue in most cases when the completed tort occurs. *See, e.g.*, *Chemtall Inc. v. Madden*, 216 W. Va. 443, 455, 607 S.E.2d 772, 784 (2004). But that is not always the case. The decision in *Hickman* dispensed with the always rigid and purely mathematical analysis that often controlled limitations analyses in West Virginia product liability actions. *See Hickman*, 178 W. Va. at 251, 358 S.E.2d at 812 ("Before today, the statute of limitations for products liability actions was said

5

to have run from the date of injury. 'The statute of limitations ordinarily begins to run when the right to bring an action for personal injuries accrues which is when the injury is inflicted.' From an administrative point of view, this created a very neat, workable test. However, it also produced several harsh results.") (citation omitted).

The facts in *Hickman* illustrated the need for more flexibility. In *Hickman*, a customer at Hickman's place of employment began filling an air tank. Both the customer and Hickman assumed a pressure switch would cut off the air flow when the tank was full. But the tank exploded, and fragments struck and injured Hickman. The Supreme Court of Appeals, however, did not conclude the limitations period commenced with the explosion. Rather, it held that accrual occurred two days later, when "Hickman was fully aware that his injuries were caused by the air tank, and a fragment of the air tank, showing the tank's manufacturer, was found." *Hickman*, 178 W. Va. at 250, 358 S.E.2d at 811; Philip Combs & Andrew Cooke, *Modern Products Liability Law in West Virginia*, 113 W. Va. L. Rev. 417, 470 (2011) ("Obviously, the plaintiff knew that he was injured at the time of the explosion and two days later he learned the identity of the manufacturer of the air tank.").[1] The West Virginia Court additionally observed as follows:

> We could also envision a situation where there is a hidden cause to an accident which no one had reason to suspect at the time. For example, in the current case, if it is found after later inspection that the air tank exploded because a piece flew off of a grinder and struck the air tank, then the cause of action against the grinder manufacturer would not accrue until, by an exercise of reasonable diligence, the plaintiff could have discovered both the identity of the maker of the grinder and the grinder's causal connection to the accident.

*Hickman*, 178 W. Va. at 253, 358 S.E.2d at 814.

---

[1] Additional West Virginia cases suggest that accrual will not always coincide precisely with the injury suffered. *See, e.g.*, *Goodwin v. Bayer Corp.*, 218 W. Va. 215, 218, 624 S.E.2d 562, 565 (2005) (auto body worker inhaling paint fumes since 1969, and forming a belief in 1988 that his health problems were related to paint, was put on notice of his possible product liability claim after he "first start[ed] thinking" his breathing problems were related to the substance after visiting his physician in 1997).

The decision in *Hickman* thus announced the following standard for application of the discovery rule:

> In products liability cases, the statute of limitations begins to run when the plaintiff knows, or *by the exercise of reasonable diligence should know*, (1) that he has been injured, (2) *the identity of the maker of the product*, and (3) that the product *had a causal relation* to his injury.

Syl. pt. 1, *Hickman*, 178 W.Va. at 249, 358 S.E.2d at 810 (emphasis added).

The *Hickman* formulation was then teased out further in *Gaither v. City Hospital, Inc.*, 199 W.Va. 706, 487 S.E.2d 901 (1997):

> In tort actions, unless there is a clear statutory prohibition to its application, under the discovery rule the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury.

Syl. pt. 4, *Gaither*, 199 W.Va. at 708, 487 S.E.2d at 903. The decision in *Dunn* then further refined the inquiry as follows:

> Under the discovery rule set forth in Syllabus Point 4 of *Gaither v. City Hosp., Inc.*, 199 W.Va. 706, 487 S.E.2d 901 (1997), whether a plaintiff "knows of" or "discovered" a cause of action is an objective test. The plaintiff is charged with knowledge of the factual, rather than the legal, basis for the action. This objective test focuses upon whether a reasonable prudent person would have known, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action.

Syl. pt. 4, *Dunn*, 225 W.Va. at 46, 689 S.E.2d at 258. As noted in *Dunn*, "*In most cases*, the *typical plaintiff* will 'discover' the existence of a cause of action, and the statute of limitation will begin to run, at the same time that the actionable conduct occurs." *Dunn*, 225 W. Va. at 53, 689 S.E.2d at 265 (emphases added).

**D.     Analysis**

Assuming that step two is resolved in GM's favor, and also that Mr. Paynter is properly charged with an awareness of the first two elements of the step three, discovery rule analysis, the Amended Complaint offers little to no information concerning whether, within the two-year period, he was aware that the offending airbag had a causal relationship to Benjamin's injuries and death. Applying the objective test from *Dunn* regarding whether a reasonable, prudent person would have known, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action, the inquiry is murky at best. For example, all eyes may well have been trained first on the third-party driver who crossed the centerline without explanation. Second, again from an objective standpoint, airbags may fail to deploy for reasons other than a product defect. *See Koutsoukos v. Toyota Motor Sales, U.S.A., Inc.*, 137 Conn. App. 655, 663–64, 49 A.3d 302, 307 (2012) ("An accident report merely indicating front end damage to a vehicle does not establish reliably the forces and angles of impact that contributed to such damage, when and if the damage was sustained during the accident sequence, and whether those forces would be expected to result in the deployment of the driver's side front airbag."); *Auttika Taing v. Braisted*, 456 N.J. Super. 465, 470, 195 A.3d 534, 537 (Law. Div. 2017) ("The court has determined that a motor vehicle's airbag system is a complex mechanism or instrumentality which requires expert testimony to explain why an airbag did or did not activate in a specific situation."); *Batiste v. Gen. Motors Corp.*, 802 So.2d 686, 689–90 (La. App. 4 Cir. May 23, 2001) ("More significantly, we cannot say that the only fair and reasonable conclusion is that the defendant's breach of a duty caused the accident. The affidavits of General Motors' experts show otherwise. Moreover, there are many accidents in which the failure of the airbag to deploy is consistent with its proper functioning. The defendant's experts showed that the failure of the airbag to deploy was

attributable to the manner in which the plaintiff's vehicle made impact."); *Costantino v. Ford Motor Co.*, 178 A.3d 310, 312 (R.I. 2018) ("In the instant case, the plaintiff failed to submit an affidavit from his expert, Mr. Benanti, to rebut the opinion of the defendants' expert that the airbags in the truck functioned properly on the day of the accident and that their failure to deploy was not due to any defect in the airbags.").

Considering these and other factors, the factual allegations in the Amended Complaint are markedly insufficient to clearly indicate when, from an objective standpoint, there developed the necessary causal linkage between Benjamin's injuries and death and the airbag installed in the Trailblazer by GM. The Court notes this result is in accord with unpublished decisions of my colleagues under similar circumstances. *See, e.g.*, *Messinger v. Toyota Motor Eng'g & Mfg. N. Am., Inc.*, No. 2:10-000976, 2014 WL 1303287, at *5 (S.D. W. Va. Mar. 27, 2014) (Johnston, C.J.) (decedent killed in a 2001 motor vehicle accident in which he was seen accelerating at a high rate of speed, and estate administrator did not learn until 2010 of possible acceleration defect; court finding claim not barred inasmuch as it was not until 2010 that administrator knew or should have known that the vehicle bore a causal relation to the injury.); *Short v. Yamaha Motor Corp.*, No. 2:11-00999, 2012 WL 1365443, at *3 (S.D. W. Va. Apr. 19, 2012) ("This case is distinct from other product liability cases in which the WVSCA refused to apply the discovery rule because, in this case, the plaintiff is not claiming that he did not know that the product was defective; rather, he is claiming that he did not know that the Rhino was the cause of his injury."); *Michael v. Wyeth, LLC*, No. 2:04-0435, 2011 WL 2011480, at *7 (S.D. W. Va. May 23, 2011) ("To be sure, plaintiff's conduct in November 2001 does show that she was at least inquisitive about the causal link. She did, for instance, ask several of her doctors whether such a link existed. But the doctors gave her only equivocal answers such as 'we don't know for sure.'

9

After hearing these answers, it appears that plaintiff continued to hold some suspicions about the relationship between the HRT drugs and her cancer.").

GM is thus not entitled to dismissal of the Amended Complaint, at this point, based upon a statute of limitations defense.[2]

### III.

Having considered the parties' contentions and governing law, and based upon the foregoing discussion, it is **ORDERED** as follows:

1. That the Motion to Dismiss [**Doc. 3**] be, and hereby is, **DENIED**; and
2. That the Motion to Stay [**Doc. 17**] be, and hereby is, **DENIED** as moot.

The Clerk is directed to send a copy of this written opinion and order to counsel of record and any unrepresented parties.

ENTERED: September 1, 2020



Frank W. Volk
United States District Judge

---

[2] The parties devoted the entirety of their arguments to whether the November 4, 2019, Amended Complaint related back to the September 10, 2019, original pleading. Inasmuch as the Court does not, at this point, perceive a limitations bar, the applicability of the relation-back doctrine need not be addressed.